[Crim. No. 38558. Second Dist., Div. Four. Jan. 20, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN CARL MONTALVO, Defendant and Appellant.

COUNSEL

Fred A. Parks for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FILES, P. J.**—John Montalvo appeals the judgment entered following a jury trial in which he was convicted of forcible rape, sodomy and false imprisonment, with the use of a knife. (Pen. Code, §§ 261, subds. (2) and (3), 286, subd. (c), 236, 12022, subd. (b).) ■ He contends (1) that the testimony of the complaining witness was inherently improbable and therefore insufficient to support the verdict of conviction, and (2) that he is entitled to presentence good-time and work-time credits.

The evidence which supports the judgment includes the following: During the early morning hours of February 16, 1980, 25-year-old Corrine T. was accosted by defendant as she awaited service at the drive-up window of a Jack-in-the-Box restaurant in Long Beach. Defendant entered her car and asked that she order some food for him as the walk-in portion of the establishment was closed. She complied, albeit concerned

at the strange request, and drove to the edge of the driveway after obtaining the food. At this point, Corrine requested that defendant leave the vehicle. He refused, demanding instead to be driven to a nearby motel. Once there, defendant suggested they eat their food together despite Ms. T.'s expressed desire to leave. A few minutes later, appellant pointed a knife at her, and ordered her to enter one of the motel rooms. Knife in hand, appellant took the car keys and escorted Ms. T. to a room, locking the door after they entered.

Defendant placed the knife aside and began to eat his food while conversing with Ms. T. After about 45 minutes, he ordered her to remove her clothing, which she did after he threatened to get the knife. After sometimes heated argument, defendant threw Ms. T. to the bed where he committed the acts of rape and sodomy. Thereafter, he permitted her to dress and escorted her to her car. Once free, Ms. T. reported the incident to the police. Medical tests confirmed that sexual activity had occurred, and it was determined that defendant had registered at the motel under a fictitious name. During the pendency of this case in the courts below, defendant twice telephoned Ms. T. from the courthouse detention facility.

In his defense, defendant admitted engaging in the charged sexual acts but asserted they had been consensual.

Defendant's first contention is meritless. There is nothing inherently improbable or incredible in Ms. T.'s testimony. The fact that defendant's conduct extended over a considerable time and that his methodology was somewhat bizarre, does not impair the substantiality of the victim's testimony. (Cf. *People* v. *Thornton* (1974) 11 Cal.3d 738, 754-755 [114 Cal.Rptr. 467, 523 P.2d 267].)

■ Defendant's contention that he is entitled to "conduct credit" exposes a serious misunderstanding by the trial judge as to his sentencing duties.

In pronouncing sentence, on July 28, 1980, the trial court gave its reasons and imposed a term of 11 years in state prison for the offenses of which defendant was convicted in this case, to be consecutive to a sentence which had been imposed in another case. The court then said: "The defendant would be entitled to credit of 151 days for time served in this matter.

"In that matter, frankly, the Court does not know whether he is entitled to Sage time or not, in view of the fact he was committed while—

while he was actually on a warrant for his last offense. And the Appellate Court will have to decide that."

The court then formally advised defendant of his right to appeal, following which this exchange took place: "THE COURT ... Do you have any question you wish to ask about this, sir?

"THE DEFENDANT: Yeah. I mean what is the total amount of years that I got?

"THE COURT: Eleven years.

"THE DEFENDANT: Eleven years. And that's to run consecutive with the six years and eight months?

"THE COURT: That is correct. However, there is a computation I believe the Department of Corrections will make. So it will not be technically a complete adding of that to the other sentence.

"THE DEFENDANT: So it wouldn't be a total of 16 years and 8 months, and then two-thirds of that?

"THE COURT: I do not think so, no. No. It actually would probably— The two combined would probably come out about 12 years and 8 months.

"THE DEFENDANT: Actual time served?

"THE COURT: No. That would probably be what the two sentences combined would be, as far as the Court can figure."

The "six years and eight months" mentioned by the court was the sentence imposed July 11, 1980, for attempted robbery with a weapon and robbery with a weapon.

The abstract prepared by the clerk on July 29, 1980, adds together the July 28 sentence of eleven months and the July 11 sentence of six years eight months. The abstract then declares "the total unstayed prison term imposed by this judgment is 17 2/3 years." The abstract also shows credit for 151 days "actual local time," as pronounced from the bench.

Before discussing what the sentence should be, we call attention to two errors in the trial court's perception of its duties.

First, it is the business of the trial court, and not the appellate court, to determine the credit to which the defendant is entitled by reason of presentence confinement.

Penal Code section 2900.5, subdivision (d) states: "It shall be the duty of the court imposing the sentence to determine the date or dates of any admission to and release from custody prior to sentencing, and the total number of days to be credited pursuant to the provisions of this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213."

Rule 252, California Rules of Court, provides: "At the time of sentencing, the court shall cause to be recorded on the judgment or commitment the total time in custody to be credited upon the sentence under Penal Code Section 2900.5. Upon referral of the defendant to the probation officer for an investigation and report under Penal Code Section 1203(a) or 1203(f), or upon setting a date for sentencing in the absence of a referral, the court shall direct the sheriff, probation officer, or other appropriate person to report to the court and notify the defendant or defense counsel and prosecuting attorney within a reasonable time prior to the date set for sentencing as to the number of days that defendant has been in custody and for which he may be entitled to credit. Any challenges to the report shall be heard at the time of sentencing."

It is the trial court, and not the appellate court, which has the capability of determining the facts from which the credit may be computed. If the court does not have enough facts at the time of sentencing, its duty is to direct "the sheriff, probation officer or other appropriate person" to produce the information. At the time sentence is pronounced, the defendant and his attorney will be present and will have seen what is in the reports submitted to the court on this subject. Rule 252 explicitly requires that any dispute as to the amount of allowable credits shall be resolved at that time.

If there ever was ever any doubt about the trial court's responsibility under section 2900.5 after the 1978 amendment, it was put to rest by the Supreme Court in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal. Rptr. 280, 611 P.2d 874]. Because *Sage* was establishing new law with respect to behavior credits, the Supreme Court declared (at p. 509) that to avoid further court proceedings for prisoners theretofore sentenced, the Department of Corrections should make available an administrative procedure by which to determine their entitlement to credit. But the *Sage* court also made it perfectly clear that the adjudication of credits

was the duty of the sentencing court. The *Sage* court said at pages 508-509: "Penal Code section 2900.5 imposes on the sentencing court the obligation to determine the number of days of custody and, in those cases to which it expressly applies, conduct credit to which the defendant is entitled, and to enter the credits on the abstract of judgment."

If a trial judge does not understand the law which is applicable at the time of sentencing, it is his privilege to ask counsel for the respective parties to submit authorities.

The judgment as pronounced and entered by the trial court awarded credit for 151 days of presentence custody, and omitted any provision for behavior credits. Having determined the number of days of custody for which the defendant was entitled to credit, the court was required to allow conduct credits at the rate of one day for each two days in custody, that is, 75 days, absent a showing that defendant was not entitled.

The Attorney General asks us to remand the case for a determination as to whether the entire 151 days of presentence custody were in fact "attributable to proceedings related to the same conduct for which the defendant has been convicted" within the meaning of subdivision (b) of Penal Code section 2900.5.

The Attorney General invokes the principle that a trial court exceeds its jurisdiction when it imposes a sentence which is unauthorized by the Penal Code. An unauthorized sentence may be corrected when brought to the attention of a reviewing court. (*In re Sandel* (1966) 64 Cal.2d 412, 418 [50 Cal.Rptr. 462, 412 P.2d 806]; *People v. Serrato* (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289]; *People v. Massengale* (1970) 10 Cal.App.3d 689 [89 Cal.Rptr. 237].) But this is not that kind of case.

The trial court in this case had before it the probation officer's report indicating that the defendant had been in custody 145 days. That report purportedly complied with the requirement of rule 252, quoted *supra*. At the sentencing hearing, defense counsel stated that defendant actually had been taken into custody 6 days earlier than the probation report showed, so that the days in custody totaled 151. The prosecutor did not dispute this. After the trial court had pronounced judgment it made its finding that the defendant was "entitled to credit of 151 days for time served in this matter." After that the court made a remark suggesting doubt as to whether all of this time was attributable to this case. Neither attorney made a comment on that subject, and the court went ahead with other matters.

If the 151-day finding was incorrect it was judicial error, brought about either by incorrect information or a lack of pertinent information. The court had jurisdiction to make the computation and did so upon information which was properly before it. This was not an act in excess of jurisdiction.. The *Sandel* line of cases, cited above, is not a cure-all for judicial error. (See *In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal. Rptr. 222, 421 P.2d 70]; *People* v. *McAllister* (1940) 15 Cal.2d 519, 526 [102 P.2d 1072]; *People* v. *Getty* (1975) 50 Cal.App.3d 101, 107 [123 Cal.Rptr. 704].)

*People* v. *Macias* (1979) 93 Cal.App.3d 788 [156 Cal.Rptr. 104], relied upon by the Attorney General, is distinguishable. That case involved a crime committed by a defendant who was in custody in state prison. The trial court, in sentencing the defendant for his new offense, with knowledge of the facts, gave the defendant credit for time in prison custody. The appellate court treated that credit as a provision in excess of jurisdiction, and ordered the judgment amended. That situation is not comparable to ours, where the court made a factual determination supported by information from a proper source.

The second duty which the trial court overlooked was to determine, in accordance with Penal Code section 1170.1, how consecutive terms for multiple offenses should be combined, and to furnish to the Department of Corrections an abstract of judgment reflecting the sentence as so computed. (Pen. Code, § 1213.) The failure of the trial court to do so has ceased to be material due to subsequent events. We take judicial notice of our own records which show that the robbery convictions and the sentence imposed July 11, 1980, were reversed by this court and the case remanded to the superior court for a new trial. (*People* v. *Montalvo* (1981) 117 Cal.App.3d 790 [173 Cal.Rptr. 51].)

Therefore the sentence which is the subject of the present appeal is no longer the "second or other subsequent judgment" which is referred to in Penal Code section 669.

The judgment is modified to include an additional credit of 75 days and, as so modified, is affirmed.

Woods, J., and McClosky, J., concurred.

A petition for a rehearing was denied February 19, 1982, and the opinion was modified to read as printed above.