[Crim. No. 41147. Second Dist., Div. Five. Feb. 15, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH JOSEPH BRITE, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Nancy Ann Stoner, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahy and Richard L. Walker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant Ralph Joseph Brite challenges a judicial determination of his presentence custody credits. He contends that the trial court initially had jurisdiction to determine his presentence credits yet lost its juris-

diction once having made said factual determination. Thereupon defendant asserts that the court's subsequent deletion of his previously awarded credit time was unauthorized and in excess of its jurisdiction (citing *People* v. *Montalvo* (1982) 128 Cal.App.3d 57 [179 Cal.Rptr. 872]). We disagree with defendant's analysis and therefore reject his contention on appeal.

On January 10, 1980, defendant was arrested and charged with being an ex-felon in possession of a firearm in violation of section 12021 of the Penal Code.[1] Defendant was convicted upon a plea of nolo contendere. He received a three-year sentence which was suspended in favor of three years of probation. That probation was conditioned upon his serving at least 18 months in a drug treatment program. Defendant was to receive credit for time served.

On May 13, 1980, while still in custody, and awaiting release to the drug treatment program, defendant was charged with the theft of two automobiles in violation of section 487, subdivision 3 of the Penal Code and section 10851 of the Vehicle Code. Defendant was convicted of the Vehicle Code violation upon his plea of nolo contendere. On September 2, 1980, he was placed on "concurrent formal probation"[2] with the previously prescribed conditions of his earlier conviction.

At the same September 2 sentencing/probation hearing, the court also established defendant as having served 113 days in actual custody for this charge.[3]

On September 7, 1980, defendant was again arrested, this time on charges of attempted robbery (Pen. Code, §§ 664, 211) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Additionally, it was alleged that defendant had used a deadly weapon (a knife) in the course of crimes charged and had previously served prison sentences for two prior felony convictions.

On November 18, 1980, defendant agreed to a plea bargain, by signing a felony disposition agreement, waiving his constitutional rights, and pleading guilty to the assault charge. Additionally, he admitted his use of a knife and the prior felony convictions as well as his probation violations. In return for his plea, he would be credited for time served in the instant case and the two probation violations. Also, the court agreed it would give him the middle term for the

---

[1] All further references are to the Penal Code unless otherwise noted.

[2] Inasmuch as we are unaware of any legislation authorizing "concurrent probation," we believe it would have been far more appropriate and correct to categorize the defendant as being placed on a single probation for two crimes.

[3] Pursuant to stipulation of counsel.

assault and might impose consecutive time on the probation violations. Defendant received a three-year midbased sentence for the assault plus one year for the prior offense.[4] Defendant's probation was also revoked, wherein the court imposed a sentence of one-third of the midbase term of two years for each of defendant's two convictions. All sentences were to be combined and served consecutively with the principal assault sentence.

The combined total sentence of all three cases totalled five and one-third years. Counsel stipulated that defendant was to receive credits as follows:[5]

Case No. *CR 15942* (assault with a deadly weapon)—186 days actual custody/93 days conduct credits totalling 279 days.

Case No. *CR 15252* (ex-felon in possession of a firearm)—322 days actual custody/161 conduct credits totalling 483 days.

Case No. *CR 15646* (grand theft auto)—330 days actual custody/165 conduct credits totalling 495 days.

On April 15, 1980, the court reconvened to clarify an apparent error in defendant's credit entitlements, discovered by the Department of Corrections. It was claimed that defendant had received an unauthorized award of 186 credits for the two cases in which he had been granted probation. Pursuant to section 2900.5, subdivision (b), all parties agreed that the 186 days which appellant was determined to have spent in custody for case No. 15942 (assault with a deadly weapon) was to be applied only to that case.[6] Accordingly, 186 days were deleted from defendant's 2 other cases resulting in an amendment to the abstract of judgment as follows:

Case No. *CR 15942* (assault)—*no change.*

Case No. *CR 15252* (ex-felon in possession of firearm)—136 days actual custody/68 days conduct credit totalling 204 days.

Case No. *CR 15646* (grand theft auto)—144 days actual custody/72 days conduct credit totalling 216 days.

---

[4]The court stayed an additional one-year enhancement for using a deadly weapon pursuant to Penal Code section 12022, subdivision (b).

[5]The court declined to rule on the prosecution's argument that defendant was improperly receiving 186 days of overlapping credits pursuant to section 2900.5, subdivision (b).

[6]Defendant was not entitled to credit given for time spent in custody during the same period he was incarcerated due to another offense. (See *In re Rojas* (1979) 23 Cal.3d 152, 155-157 [151 Cal.Rptr. 649, 588 P.2d 789], and *In re Ricky H.* (1981) 30 Cal.3d 176, 185 [178 Cal.Rptr. 324, 636 P.2d 13].)

Again the Department of Corrections challenged the accuracy and propriety of the court's ruling. On September 10, 1981, the court heard new arguments for a second recalculation of defendant's custody credits. On this date the prosecution sought an additional deletion of defendant's credits, totalling approximately 157 days. Argument was tendered that the consecutive sentences defendant received January 7, 1981, entitled him only to one credit for each day he was in custody.[7] The court agreed, determining that defendant had been improperly awarded custody credits for periods of custody time not attributable to all of his cases. The court set forth defendant's custody history and credit computations as follows:

Case No. *CR 15252* (ex-felon in possession of gun) arrested January 10, 1980, to be held in custody until May 13, 1980, scheduled release to drug treatment program, plus one day served in drug treatment program on September 2, 1980. One hundred twenty-six days actual custody/63 conduct credits totalling 189 credits.

Case No. *CR 15646* (grand theft auto)—arrested May 13, 1980, held in custody through September 2, 1980, release to drug treatment program 113 days actual custody/56 conduct credits totalling 169 credits.

Case No. *CR 15942* (assault with a deadly weapon)—arrested September 7, 1980, held in custody through January 7, 1981 sentencing, 123 days actual custody/61 conduct credits.

It is the judgment encompassing this latest group of findings upon which defendant brings his appeal.

DISCUSSION

■ Defendant concedes that the trial court was entitled to modify the credit determination originally rendered on January 7, 1981, dispossessing him of 186 credits to which he was never legally entitled.[8] Nevertheless, defendant insists that the court had no authority to later amend that finding on September 10, 1981, citing *People* v. *Montalvo, supra,* 128 Cal.App.3d 57. On this point we are only in partial accord.

---

[7] This argument did not consider conduct credits.

[8] Begrudgingly, defendant admits the court did not have authority to award him 186 custody credits at the initial sentencing hearing. Consistent with the holding in *People* v. *Macias* (1979) 93 Cal.App.3d 788, 792 [156 Cal.Rptr. 104], the trial court exceeded its jurisdiction by initially awarding defendant triple credits for a single period of custody time in contravention of section 2900.5. That section proscribes against giving more than one credit "for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

In *People* v. *Montalvo, supra,* the sentencing court was held to have made a proper credit determination without computing defendant's conduct credits as it was obligated to do, pursuant to *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]. The appellate court painstakingly demonstrated that pursuant to section 2900.5, subdivision (d), and California Rules of Court, rule 252, a sentencing court is both authorized and obligated to make a definitive factual determination of the credits due a defendant by reason of any presentence confinement.[9] Accordingly, we agree with the application of *People* v. *Montalvo, supra,* to the extent that the trial court below was fully empowered and duty bound to make a factual determination of defendant Brite's credit entitlements. However, while *Montalvo* dealt with a trial court's failure to make a purely mechanical computation,[10] the court below neglected to fully make its required factual determination.

Section 2900.5, subdivision (d), mandates that the sentencing court determine the dates of a defendant's admission to and release from custody prior to sentencing in addition to its duty of determining defendant's days in custody. The obvious reason for the former requirement is to help insure an accurate assessment of the latter. In the matter sub judice, the sentencing court neglected to make a finding of the actual dates of defendant's presentence custody. As a result, it appears reasonable to conclude that the court committed the error section 2900.5, subdivision (d), was designed to avoid.

The net effect of the court's failure to comply with this section was to render its initial finding and resulting sentence a nullity. It follows that once appropriately apprised of its inadvertence, the court therein became licensed to impose a proper finding and sentence. (*People* v. *Hunt* (1982) 133 Cal.App.3d 543, 564 [184 Cal.Rptr. 197]; *People* v. *Macias, supra,* (93 Cal.App.3d at

---

[9]Penal Code section 2900.5, subdivision (d), specifies: "It shall be *the duty of the court imposing the sentence to determine the date or dates of any admission to and release from custody prior to sentencing, and the total number of days to be credited pursuant to the provisions of this section.* The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213." (Italics added.)

The Judicial Council implemented that requirement by adopting California Rules of Court, rule 252, which provides in relevant part: "Upon referral of the defendant to the probation officer for an investigation and report under Penal Code Section 1203(a) or 1203(f), or upon setting a date for sentencing in the absence of a referral, the court shall direct the sheriff, probation officer, or other appropriate person to report to the court and notify the defendant or defense counsel and prosecuting attorney within a reasonable time prior to the date set for sentencing as to the number of days that defendant has been in custody and for which he may be entitled to credit. *Any challenges to the report shall be heard at the time of sentencing.*" (Italics added.)

[10]Having determined the actual number of days that defendant was in custody, the court thereupon had only to multiply that figure by 1.5 to reach the total number of defendant's credits. (See *People* v. *Montalvo, supra,* and *In re Allen* (1980) 105 Cal.App.3d 310, 314-315 [164 Cal.Rptr. 319].)

p. 792; *People* v. *Massengale* (1970) 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237].)[11]

Proceeding on the supposition that the court could correct its prior erroneous ruling, we observe that the court did just that at the September 10, 1981, hearing, eliminating any need for our further consideration of this point.[12] [13]

■    As an alternative to defendant's mainstay argument that the court lacked jurisdiction to amend its previous factual findings of presentence credits, defendant contends that a reduction of his credits significantly impairs the sentence he bargained for. We find this contention is no more than an appellate afterthought, wholly without merit.

First, the record reflects that defendant was never promised anything more than a receipt of credit "for time served on this case (the assault with a deadly weapon) and both violation of probation cases" (ex-felon in possession of firearm and grand theft auto). Because this statement does not include any specific representations as far as an actual number of credits, we cannot fathom defendant reasonably interpreting the remark to constitute a promise of some 1,257 credits in return for his guilty plea.[14] Moreover, defendant's failure to raise this argument on April 15, 1980, when the court deleted 186 credits previously awarded him, belies the sincerity of his contention and should estop him from asserting that point at this time.

---

[11]Although the gross disparity between the court's initial and final findings (approximately 218 days) may be attributed to the court's lack of compliance with the Penal Code, it is equally true that a misunderstanding of the law by the court contributed to the court's initial error. This conclusion is supported by the court's decision not to rule on an alleged misapplication of section 2900.5, subdivision (b), which resulted in the award of 186 unauthorized credits to defendant as described above. Even the court's failure to rule, by itself, is determinative of a misunderstanding of Penal Code section 2900.5 and rule 252. (*People* v. *Montalvo, supra,* 128 Cal.App.3d 57. Thus, the court's misunderstanding of the law equally qualifies the court's initial findings as erroneous and therefore subject to future vacation and correction by the court. (*People* v. *Hunt, supra,* 133 Cal.App.3d at p. 564 for full cite; *People* v. *Macias, supra,* 93 Cal.App.3d at p. 792; *People* v. *Massengale, supra,* 10 Cal.App.3d at p. 693.)

[12]Tangentially, we note that at the September 7, 1981, credit recalculation hearing, the court stated that it made a clerical error. This fact alone tends to bolster the theory that the court was legitimately empowered to amend its previous judicial finding. (See *Estate of Doane* (1964) 62 Cal.2d 68, 71 [41 Cal.Rptr. 165, 396 P.2d 581], holding that a court is privileged to correct an inadvertent or improvident decision made by it and that great weight is given that court's opinion of its admission of inadvertent conduct.) We choose not to develop this issue, in view of the other reasons justifying the court's conduct which we articulated above.

[13]We would be remiss in not pointing out a possible error in computation with respect to defendant's credit entitlement for the one day he spent in the drug treatment program on September 2, 1980. However, since neither party chose to dispute this finding, we are reticent to discuss it now.

[14]This number is the combined total of the credit determination initially made by the court on January 7, 1980.

Finally, defendant received exactly what he bargained for as indicated by the felony disposition agreement bearing his signature. Where defendant received a sentence of five and one-third years in return for his guilty plea, there is no breach of his plea bargain.

We affirm the judgment of the lower court.

Feinerman, P. J., and Hastings, J., concurred.