[No. C002804. Third Dist. Oct. 11, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD P. KADING, Defendant and Appellant.

**COUNSEL**

Thomas M. Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Shirley A. Nelson and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

SIMS, J.—In this case, we again address a central issue of modern criminal jurisprudence: a defendant's entitlement to presentence custody credits under Penal Code section 2900.5[1]

Among other things, we discuss the characterization of a defendant's custodial time when execution of a state prison sentence is suspended and defendant is ordered held in county jail while he is examined by physicians to determine whether he is addicted to, or in imminent danger of becoming addicted to, narcotics under Welfare and Institutions Code section 3051. (All references to section 3051 are to this statute.)

### Procedural History

On December 18, 1986, defendant was sentenced to six months in county jail on unrelated misdemeanor cases. At all times discussed below, defendant was serving his misdemeanor sentence.

On January 20, 1987, in this case, he pled guilty to issuing a check without sufficient funds (§ 476a) and upon the advice of counsel requested that his own recognizance (O.R.) release in this case be revoked so he could purportedly begin receiving presentence custody credit. (See *People* v. *Ford* (1980) 113 Cal.App.3d 429, 432 [170 Cal.Rptr. 216].) In response the trial court revoked the O.R. release and remanded defendant to the county jail "on this charge so that he may receive appropriate credits in connection with his incarceration."

On February 13, 1987, the trial court imposed a two-year state prison sentence but suspended its execution (as required by statute) pending initiation of proceedings to determine whether defendant should be committed for drug addiction pursuant to section 3051 et seq. The state prison sentence was to run concurrently with the misdemeanor sentence.[2] The court ordered: "The defendant in the interim will be remanded to the custody of the sheriff without bail."

The proceedings pursuant to section 3051 are not a part of the record on appeal. However, the record does show that defendant remained incarcerated in county jail and was examined by at least one physician. On June 5, 1987, the narcotic commitment proceedings were dismissed "based upon

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The trial court did not mention the misdemeanor sentence when it imposed the state prison sentence. The failure to run the state prison sentence consecutively to the misdemeanor sentence meant the two sentences would run concurrently as a matter of law. (§ 669.)

the doctor's [*sic*] reports and the desire of all counsel and the defendant." Defendant made a motion for bail or O.R. release but the trial court denied it stating, "No, this gentlemen has now been sentenced to . . . state prison, not even entitled to bail or any other matter." Defendant was remanded to the custody of the sheriff without bail.

On July 2, 1987, following several continuances, the court vacated the previous suspension of execution of sentence, thereby commencing the two-year state prison sentence. The trial court refused to grant defendant's request for custody credit from January 20, 1987 (the date upon which he entered his guilty plea in this case) to July 2, 1987 (the date sentence was ordered into effect). The court believed custody credit was precluded by our opinion in *People* v. *Davis* (1986) 187 Cal.App.3d 1250 [232 Cal.Rptr. 428]. There, following *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], we concluded, among other things, that a defendant was not entitled to presentence custody credit where he was serving a felony sentence on a factually unrelated case. (*Davis, supra,* at p. 1256.)

Defendant argued to the trial court that this case was distinguishable from *Davis*. Defendant asserted that if he had not been held in a "no bail" status in this case, he would have been able to serve his misdemeanor sentence in a program described variously as "work furlough," "work alternative," or "no jail alternative."

The trial court stated, ". . . I will indicate that because I had sentenced Mr. Kading to the state's prison [*sic*], I did not feel it appropriate that he go out on work furlough or the like." The trial court expressly found that had it placed defendant on O.R. release status in this case, he would have been eligible for the work alternative program. The trial court concluded: "I have given you a record, Mr. Kading. That those—you clearly indicated to the Court that [your desire to participate in the work alternative program] was the basis for the request [for O.R. release], and this Court denies the request. Therefore, in effect, denying you the right on your other sentence to have your work alternative program and/or no jail alternative.

"The Court is going to deny the request for credit from January 20th. However, the record is clear, the disabilities that were placed on Mr. Kading as a result of this Court's ruling on his request.

"That matter can easily be presented to the people that wrote People versus Davis. If that's a distinction, I am sure they will say so."

Defendant now tenders the issue to "the People that wrote People versus Davis." Defendant contends he is entitled to custody credit from January

20 until July 2. He asserts that if he is not, then he received ineffective assistance of counsel when his counsel advised him to request that his O.R. release be revoked in order to permit him to begin receiving custody credit against his anticipated sentence. For reasons to follow, we conclude *Davis* is distinguishable and the trial court must redetermine defendant's entitlement to custody credits.

## DISCUSSION

In the absence of defendant's misdemeanor sentence, defendant would have been entitled to the credit he seeks pursuant to section 2900.5, which mandates in pertinent part that "all days of custody of the defendant . . . shall be credited upon his term of imprisonment . . . ." (*Id.,* subd. (a); see *People* v. *Riolo* (1983) 33 Cal.3d 223, 226 [188 Cal.Rptr. 371, 655 P.2d 723].) The only viable question is whether defendant has no entitlement to any credit because, at all relevant times, he was serving a sentence on unrelated misdemeanor cases.

In *In re Rojas, supra,* 23 Cal.3d 152 our Supreme Court held that a defendant was not entitled to presentence custody credit under section 2900.5 where he had been in custody waiting trial for murder but simultaneously serving a sentence for a factually unrelated conviction for manslaughter. (*Id.,* at pp. 154, 157.) In *People* v. *Davis, supra,* 187 Cal.App.3d 1250, we concluded, among other things, that under *Rojas* defendant was not entitled to presentence custody credit in a prosecution for unlawful drugs where he was simultaneously serving a sentence for being a felon in possession of a firearm. (*Id.,* at pp. 1254, 1256.) Other courts, following *Rojas,* have recognized a defendant is not entitled to presentence custody credits in a felony prosecution where the defendant is serving a misdemeanor sentence while awaiting trial on the factually unrelated felony. (See, e.g., *People* v. *Adrian* (1987) 191 Cal.App.3d 868, 883 [236 Cal.Rptr. 685]; *People* v. *Esparza* (1986) 185 Cal.App.3d 458, 468 [229 Cal.Rptr. 739].)

In order to determine whether *Rojas* precludes the credits defendant seeks, we shall proceed in the usual manner of the octopus: backwards.[3] We first examine the period of time following the initiation of section 3051 procedures: February 13 through July 2.

*Defendant's custody status following sentencing and the stay of execution of sentence.*

As pertinent here, section 3051 provides: "*Upon conviction* of a defendant for any crime in any superior court . . . and *upon imposition of sentence,* if

---

[3]The octopus "usually swims backwards." (Burton & Burton International Wildlife Encyclopedia (1969) p. 1604.)

it appears to the judge that the defendant may be addicted or . . . may be in imminent danger of becoming addicted to narcotics the judge shall *suspend the execution of the sentence* and order the district attorney to file a petition for commitment of the defendant . . . .

"Upon the filing of such a petition, the court shall order the defendant to be examined by one physician; . . . At the request of the defendant, the court shall order the defendant to be examined by a second physician. . . . A written report of the examination by the physician or physicians shall be delivered to the court, and if the report is to the effect that the person is not addicted nor in imminent danger of addiction, it shall so certify and return the defendant to the department of the superior court which directed the filing of the petition for the ordering of the execution of the sentence." (Italics added.)

Neither section 3051 nor its related statutes expressly say whether a defendant shall receive credit against a state prison sentence for time spent in custody pending the physician's examination and report.[4] Thus, whether defendant is entitled to the credit he seeks is governed by section 2900.5 as construed in *Rojas*.

*Rojas* concluded custody credit was precluded by subdivision (b) of section 2900.5, which states in pertinent part: ". . . credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (*Rojas, supra,* 23 Cal.3d at p. 156.)

However, *Rojas* (*supra,* 23 Cal.3d at p. 156) made clear that its analysis depended on Rojas's status as an *un*sentenced prisoner: "As we noted in *In re Watson* [(1977)] 19 Cal.3d 646, 651 [139 Cal.Rptr. 609, 566 P.2d 243] '[section 2900.5] pertains to the *pretrial* incarceration of a person charged with crime but not yet tried much less convicted, and therefore clothed with the presumption of innocence. . . .'[5]

---

[4] Welfare and Institutions Code section 3201, subdivision (c) provides in pertinent part: "Any person committed pursuant to Article 2 (commencing with Section 3050), whose execution of sentence in accordance with the provisions of Section 1170 of the Penal Code was suspended pending a commitment pursuant to Section 3051, who has spent, pursuant to this chapter, a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title I of Part 3 of the Penal Code, shall, upon reaching such accumulation of time, be released on parole under the jurisdiction of the Narcotic Addict Evaluation Authority . . . ." The statute speaks to the duration of a commitment but not to a situation where a defendant is not committed.

[5] It is clear that section 2900.5 now requires that a defendant receive credit against his "term of imprisonment" for "all days of custody of the defendant, including days served as a

"There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (23 Cal.3d at p. 156, italics in original, fn. added.)

Here, by way of contrast, defendant had been convicted and sentenced to state prison, with only the execution of sentence suspended.

This procedure was mandated by section 3051, which plainly calls for initiation of commitment proceedings only where a defendant has been sentenced and execution of sentence suspended. (*People* v. *Scott* (1984) 150 Cal.App.3d 910, 917-918 [198 Cal.Rptr. 124].) Before 1980, section 3051 allowed the trial court to adjourn the criminal proceedings pending adjudication of the commitment petition. (See Stats. 1979, ch. 359, § 1, p. 1223.) However, since 1980, section 3051 has provided for a stay of execution of sentence without adjournment of the criminal proceedings. (See Stats. 1980, ch. 822, § 1, p. 2584.) In short, under current section 3051, criminal proceedings remain alive while civil commitment proceedings proceed concurrently. A defendant is subject to a suspended state prison sentence while he is examined by at least one physician to determine his possible narcotic addiction status.

In *People* v. *Banks* (1959) 53 Cal.2d 370 [1 Cal.Rptr. 669, 348 P.2d 102], our Supreme Court discussed the effect of suspension of execution of a state prison sentence where the defendant is granted probation: "Upon pronouncement of 'sentence of imprisonment in a state prison for any term less than life' (Pen. Code, § 2600) the defendant acquires the legal status of a person who has been both *convicted* of a felony *and sentenced* to such imprisonment. During the maximum period of such term the defendant so sentenced may be retained in the constructive custody of the court or may at any time, in the discretion of the court, be committed to custody of the prison authority. The term of imprisonment in either case is that to which he was sentenced, but by granting probation and withholding commitment the court retains jurisdiction over the defendant and the res to administer the entire matter under the probation procedures. The defendant in such a case is one sentenced to imprisonment and subject to the disabilities of such judgment except that he has not been delivered to the custody of the prison authority and except insofar as he may be further relieved by the terms of the probation order.

condition of probation . . . ." (§ 2900.5, subd. (a); *People* v. *Riolo, supra,* 33 Cal.3d at p. 226.)

"It is, of course, express statutory law that 'When judgment upon a conviction is rendered, the clerk, or if there is no clerk, the judge, must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction, if any. A copy of the judgment of conviction shall be filed with the papers in the case.' (Pen. Code, § 1207.) Upon entry of such judgment and withholding of commitment the sentenced defendant is held in the custody, actual or constructive, of the court and is entitled to only such privileges as the court may affirmatively prescribe in its order. Mere stay of execution of an entered judgment manifestly does not entitle the defendant to his freedom or otherwise relieve him of the disabilities resulting from conviction and imposition of judgment of imprisonment in a state prison." (53 Cal.2d at pp. 385-386, fn. omitted.)

This discussion in *Banks* is to some extent premised on the probation statutes which are inapplicable here since defendant was not granted probation. ■ However, we think *Banks* stands for the proposition that, irrespective of the probation statutes, a defendant subject to a suspended state prison statute acquires the legal status of one convicted of a felony and sentenced to state prison. Even assuming for purposes of argument the trial court needs some statutory authority to incarcerate a defendant with such status, we think such authority must be implied in section 3051, as a necessary means of obtaining the physician's examination mandated by the statute, and in sections 1272 and 1273, which permit convicted felons to be released on bail only upon an application for probation or the filing of an appeal and then only in the discretion of the court. (See *In re Podesto* (1976) 15 Cal.3d 921, 929-930 [127 Cal.Rptr. 97, 544 P.2d 1297].) ■ Whatever is necessarily implied in a statute is as much a part of it as that which is expressed. (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86], followed in *Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214]; see *DeWitt* v. *San Francisco* (1852) 2 Cal. 289, 296 [legislation authorizing construction of courthouse necessarily includes power to purchase underlying land].)

■ From the foregoing it should be evident that, following imposition of sentence and stay of its execution, defendant's status was realistically that of a sentenced prisoner subject to the custodial control of the court, as the trial court correctly noted when it denied defendant's bail applications. In these circumstances, *Rojas* and *Davis,* which were premised on a defendant's status as an unsentenced prisoner, are inapplicable. Rather, here defendant's custody status as a sentenced prisoner was clearly "attributable to proceedings related to the same conduct for which the defendant has been convicted" as required by subdivision (b) of section 2900.5.

Nor do we perceive any unfairness from awarding defendant what has been referred to as "dual custody credit." (See, e.g., *People* v. *Esparza, supra,* 185 Cal.App.3d at p. 467.) Defendant's state prison sentence was run concurrently with his misdemeanor sentence.[6] (See fn. 2, *ante.*) This meant that the misdemeanor sentence and the state prison sentence were to overlap. (*In re Roberts* (1953) 40 Cal.2d 745, 749 [255 P.2d 782].) Thus, the sooner defendant's state prison sentence began to run, the shorter his overall period of incarceration would be.

However, if we were to deny defendant the credit he seeks, his state prison sentence would begin to run only when he was delivered to state correctional authorities. (§ 2900, subd. (a); *People* v. *Holdsworth* (1988) 199 Cal.App.3d 253, 258 [244 Cal.Rptr. 782].) Here, the date of such delivery depended upon the completion of the section 3051 proceedings which, in turn, depended upon submission and evaluation of a physician's report. Thus, if we were to deny defendant the credit he seeks, the total period of his incarceration on misdemeanor and felony sentences would fluctuate according to the time necessary for preparation and evaluation of the section 3051 physician's report.[7] We do not think a defendant's period of incarceration, served as a sentence, should depend upon the vagaries of a physician's schedule.

We therefore hold that defendant is entitled to credit against his state prison sentence for the period between February 13 and July 2 when he was incarcerated as a consequence of having been sentenced to state prison with that sentence suspended to allow the adjudication of the section 3051 petition.

■ This leaves the question whether defendant is entitled to custody credit for time between his guilty plea and the imposition of sentence: January 20 through February 12.

*Defendant's custody status between entry of plea and imposition of sentence.*

In the trial court, defendant argued he was entitled to these disputed custody credits because he would not have been in custody on the misdemeanor sentence except for his incarceration on the instant felony charges. Thus, defendant claimed he would have served his misdemeanor sentence

---

[6] Had the sentences been run consecutively, dual credit would have been barred by subdivision (b) of section 2900.5, which provides in pertinent part: "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

[7] Section 3051 places no time limit on the preparation of such a report.

on a work furlough or "work alternative" program and would not have been in custody at all if he had not been in jail on the instant felony charges. Consequently, he asserted his custody status was attributable to these proceedings within the meaning of subdivision (b) of section 2900.5. Defendant reiterates the argument in this court.

The trial court found that had defendant been granted an own-recognizance release in this case, "he would have then been eligible for a work furlough program . . . Which he was not eligible for as long as the Court ordered him to remain in jail."

As we have said, it is clear that if defendant had been serving a misdemeanor sentence in county jail without consideration of the "work furlough" or "work alternative" program, he would be entitled to no credit for his presentence custody in this case. (*People* v. *Adrian, supra,* 191 Cal.App.3d at p. 883; *People* v. *Esparza, supra,* 185 Cal.App.3d at p. 468.)

Even assuming defendant was eligible for the "work furlough" or "work alternative" program, as the trial court found, if the program required defendant to spend time daily in some custodial facility, he would not be entitled to presentence custody credit in this case. That is because the premise of defendant's argument—that he would not have been in custody except for his incarceration in this case—would be wrong.

Thus, subdivision (a) of section 2900.5 expressly defines "time spent in a . . . work furlough facility" as custodial time. For purposes of section 2900.5, it is immaterial whether defendant was in custody in county jail or in a work furlough facility, because, "The crucial element of the statute is not where or under what conditions the defendant has been deprived of his liberty but rather whether the custody to which he has been subjected 'is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.' (§ 2900.5, subd. (b).) In recognition of this element the courts have placed the emphasis on the *fact* of the defendant's custody prior to the commencement of his sentence regardless of the particular locale, institution, facility or environment of his incarceration." (*In re Watson* (1977) 19 Cal.3d 646, 651-652 [139 Cal.Rptr. 609, 566 P.2d 243].) Thus, to the extent defendant would have been required to spend time in a work furlough facility, he would have been in custody for purposes of section 2900.5. (See *People* v. *Mercurio* (1985) 169 Cal.App.3d 1108, 1112 [216 Cal.Rptr. 1].) To that extent he would be entitled to no presentence custody credits in this case even though his incarceration in this case made him ineligible for work furlough. (*Ibid.*)

On the other hand, if the applicable "work alternative" or "no jail alternative" program placed no custodial restraints on defendant, and, for

example, allowed him to serve his misdemeanor sentence at work and at home, defendant would not have been subject to any custodial restraint within the meaning of section 2900.5 as a consequence of his misdemeanor sentence. (See *People* v. *Reinertson* (1986) 178 Cal.App.3d 320, 327 [223 Cal.Rptr. 670].) In the latter event, defendant's incarceration in the instant case would be the sole cause of his custodial status. In that event, we think defendant would be entitled to custody credit in this case, since the custody to be credited would be fairly attributed solely to the instant proceedings and not to the prior misdemeanor sentence. (§ 2900.5, subd. (b).) This result is in accord with the view that application of section 2900.5 should focus on the practical "fact" of defendant's presentence custody. (*In re Watson, supra,* 19 Cal.3d at p. 652.)

We cannot assume as a matter of law that defendant would have been required to report each day to a custodial facility had he participated in the "work alternative" program. Even assuming the program was a "work furlough" program authorized by section 1208, confinement in a facility during nonworking hours is required only "unless the work furlough administrator directs otherwise." (§ 1208, subd. (d).)

Nor does the instant record permit us to decide this issue. It contains no evidence of the nature of the applicable misdemeanor "work alternative" program. It does not show whether defendant would have been required to spend time in a work furlough facility. Nor can we assume that the trial court considered this issue in denying credit, since its categorical denial of credit was premised on *People* v. *Davis, supra,* 187 Cal.App.3d 1250, where the issue was not tendered.

Subdivision (d) of section 2900.5 says, "It shall be the duty of the court imposing the sentence to determine the date or dates of any admission to and release from custody prior to sentencing, . . ." Although the trial court may doubtless ask for assistance from the parties and various agencies, the determination of these custody credits remains the court's responsibility. (See rule 252, Cal. Rules of Court.) We shall therefore remand to the trial court to take evidence and to redetermine defendant's entitlement to section 2900.5 credits according to the views set forth above. (*People* v. *Montalvo* (1982) 128 Cal.App.3d 57, 62-64 [183 Cal.Rptr. 242]; *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 175 [156 Cal.Rptr. 386].)

Finally, for the guidance of the trial court in the event it determines defendant is not entitled to presentence custody credit,[8] we address defendant's claim of ineffective assistance of counsel. Defendant asserts that

---

[8] That is, from January 20 to February 12.

because of counsel's wrong advice respecting his entitlement to custody credit in this case, "the sentence must be reversed with directions to remedy the damage done."

However, we perceive no prejudice that is remediable in this case. If defendant is denied presentence credits, it will be because he would have been in custody in a work furlough facility rather than in county jail. Presumably defendant would be prejudiced by a greater loss of freedom in his jail incarceration. ■ However, this differential in custodial amenity is clearly not the sort of prejudice that entitles defendant to a reversal of his conviction (and indeed defendant does not seek that relief), since reversal requires a showing that the result of the criminal proceedings would probably have been more favorable in the absence of counsel's errors. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 693-694 [80 L.Ed.2d 674, 697-698, 104 S.Ct. 2052]; *People* v. *Ledesma* (1987) 43 Cal.3d 171, 217-218 [233 Cal.Rptr. 404, 729 P.2d 839].) Here, defendant's assertion of error has nothing to do with the validity of his guilty plea. Hence, he has not shown that his conviction should be reversed. Nor are we empowered to rewrite section 2900.5 to give defendant custody credits unauthorized by the statute. (See *Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].)

It goes without saying that we have no occasion here to determine whether defendant may have a civil action at law against his trial counsel.[9] We merely conclude that defendant is not entitled to relief in this case on the theory counsel was ineffective.

### DISPOSITION

The judgment of conviction is affirmed. The matter is remanded to the trial court for a redetermination of defendant's entitlement to credits pursuant to section 2900.5.

Carr, Acting P. J., and Marler, J., concurred.

---

[9] Counsel on appeal did not serve as trial counsel.