Filed 11/19/21  P. v. Sincox CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANK LEWIS SINCOX,<br><br>    Defendant and Appellant. | G059710<br><br>(Super. Ct. No. 09CF0998)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Reversed and remanded with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Frank Lewis Sincox was convicted of second degree murder in 2011. His conviction was upheld on appeal. Years after judgment was final, defendant filed a petition for resentencing under Penal Code section 1170.95.[1] The trial court found the petition did not set forth a prima facie case and denied it. In so ruling, the court relied on this court's prior opinion affirming defendant's conviction; specifically, a finding there was substantial evidence in the record that defendant had directly aided and abetted the murder. Defendant appeals, arguing the trial court improperly relied on this court's prior opinion in denying his petition. We agree. We also find the court incorrectly calculated defendant's presentence credits for actual time served. For these reasons, we reverse the court's orders and remand this case with directions.

I

FACTS AND PROCEDURAL HISTORY

A. *Underlying Conviction and Appeal*

The following facts are primarily taken from our prior unpublished opinion in this matter (G045723), which was included in the record:

"Defendant was a member of the Fifth Street criminal street gang. One night he was hanging out and smoking methamphetamine with some fellow gang members. They got into a van and started driving. One of them started 'challenging' defendant and another gang member in the van, Martinez. He told them 'they don't know how to gang bang,' so they should 'go out today and do something.'

"Someone called one of the gang members to report a 'suspicious' man in Fifth Street territory. One said they should 'go gang banging, smashing some guys.' They drove down Fifth Street and found Alex Moreno Cruz, who matched the caller's description. The gang members threw gang signs at Cruz, and he threw gang signs back.

---

[1] All further undesignated statutory references are to the Penal Code.

2

"Defendant and Martinez got out of the van. Martinez 'had [his] knife out.' It was a 'special edition' 'Winchester' knife. Defendant and Martinez 'hit up' Cruz, asking where he was from (i.e., what gang he was affiliated with). Cruz answered: 'I'm from nowhere'; 'I don't bang.' Defendant and Martinez began beating him up. Martinez stabbed Cruz four times, killing him.

"Defendant was charged with one count of murder (Pen. Code, § 187, subd. (a)) with the special circumstance of murder committed for street gang purposes (§ 190.2, subd. (a)(22)), one count of street terrorism (§ 186.22, subd. (a)), and one count of conspiracy to commit murder (§ 182, subd. (a)(1)). The information alleged defendant committed the murder to benefit a criminal street gang. (§ 186.22, subd. (b)(1)(c).) It further alleged defendant suffered one prior serious and violent felony conviction (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)), and one prior active gang participation conviction (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, subd. (b))." (Fn. omitted.)

At trial, the jury was instructed on a direct aiding and abetting theory and a natural and probable consequences theory of murder. The "jury acquitted defendant of first degree murder and conspiracy, but found him guilty of second degree murder and active gang participation. It found defendant committed the murder to benefit a criminal street gang. The court sentenced defendant to a total term of 25 years to life in state prison. It imposed a 15 years to life term for the murder, a consecutive 10-year term for the gang enhancement, and a concurrent two-year term for the active gang participation."

Defendant appealed his convictions and asserted various sentencing errors. As to the conviction for active gang participation, defendant's argument hinged on whether the jury convicted him of murder under the natural and probable consequences doctrine or under a direct aiding and abetting theory. Defendant maintained he had been convicted under the former. Specifically, he claimed the jury found him guilty of murder for "commit[ing] battery or disturbing the peace by 'hitting up' Cruz, with the reasonably

foreseeable result that Martinez would kill Cruz." He contended those misdemeanors could not support a conviction for active gang participation because they did not show he "'willfully promote[d]'" felonious criminal conduct. (Quoting § 186.22, subd. (a).) Defendant conceded, however, that willful promotion was tantamount to directly aiding and abetting and his conviction on this count should be affirmed if the jury had based its murder conviction on such a theory.

This court affirmed both convictions. In doing so, we found nothing in the record showed the jury had relied on the natural and probable consequences doctrine. Further, "substantial evidence show[ed] defendant [directly] aided and abetted the murder." In particular, we found "the jury could reasonably conclude defendant: (1) knew Martinez had a knife and intended to use it to kill Cruz; (2) intended to facilitate the murder; and (3) aided the murder by helping Martinez confront and attack Cruz, and by fleeing with him. [Citations.] Because the record amply show[ed] defendant [directly] aided and abetted 'felonious criminal conduct' (§ 186.22, subd. (a)) — the murder — it sufficiently support[ed] the active gang participation conviction." As to the alleged sentencing errors, we modified the judgment to strike the 10-year gang enhancement and stay the two-year sentence for gang participation.

The trial court issued a new abstract of judgment on December 6, 2012. It reflected defendant's new sentence of 15 years to life and credited him with 863 days of actual time served.

## B. Senate Bill No. 1437

Years after defendant was sentenced, the Legislature passed Senate Bill No. 1437 (SB 1437), which went into effect on January 1, 2019. SB 1437 "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying

4

felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

The trial court then reviews the petition to determine whether the petitioner has made a prima facie showing for relief. (*Lewis*, *supra*, 11 Cal.5th at p. 960.) If so, "the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'" (*Ibid*.)

*C. Defendant's Section 1170.95 Petition*

In June 2019, defendant filed a petition for resentencing under section 1170.95. His petition stated "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine." Next, it averred "[a]t trial, [defendant] was convicted of lst or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine." It also declared defendant "was not the actual killer," and he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree." Further, the petition asserted defendant "could not now be convicted of 2nd degree murder or attempted murder under the natural and probable consequences doctrine or of murder under the 2nd degree felony murder doctrine because of changes to Penal Code § 188, effective January 1, 2019." Defendant requested counsel, which was appointed prior to the prima facie hearing.

At the prima facie hearing on December 3, 2020, the prosecution argued defendant was ineligible for relief as a matter of law. Particularly, it focused on the portion of this court's prior opinion finding there was substantial evidence defendant had directly aided and abetted the murder. The trial court agreed and denied the petition, concluding "that based on the findings in the appellate opinion, . . . a prima facie showing has not been made."

Defendant appeals, arguing the trial court improperly relied on this court's prior opinion in determining he had not made a prima facie showing. He also argues the court improperly calculated his presentence credit award. We agree with both contentions and reverse and remand for further proceedings.

6

II

DISCUSSION

A. *Defendant's Petition*

The trial court may review a defendant's record of conviction, including any appeals, in determining whether the petitioner has made a prima facie case. (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) However, "the prima facie inquiry . . . is limited." (*Id*. at p. 971.) In reviewing the petition, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.) We review the trial court's ruling de novo. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811 (*Duchine*).)

As noted by defendant, there is a split of authority as to how trial courts should conduct the prima facie review. This split results from a difference in interpretation of section 1170.95, subdivision (a)(3), which requires a petition to state "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189" under SB 1437. (§ 1170.95, subd. (a)(3).)

One appellate court has held a petitioner fails to carry his or her burden if "the record of conviction contains substantial evidence based on which a reasonable trier of fact could find the petitioner guilty of murder beyond a reasonable doubt under current law despite the changes made by [S.B. 1437]." (*People v. Garcia* (2020) 57 Cal.App.5th 100, 106, review granted February 10, 2021, S265692 (*Garcia*).) *Garcia* reasoned that section 1170.95, subdivision (a)(3) "clearly and unambiguously requires a prima facie showing that the petitioner '*could not* be convicted of . . . second degree murder because

7

of changes to Section[s] 188 [or 189] . . . .' [Citation.] 'Could' is 'used . . . as an alternative to *can* suggesting less force or certainty.'" (*Id*. at p. 114.) If the record contains substantial evidence showing the petitioner *could* have been convicted of murder under current law, then the petitioner has failed to make a prima facie case as to section 1170.95, subdivision (a)(3). In other words, the petitioner has not conclusively shown he or she *could not* be convicted of murder under current law. (*Id*. at pp. 114-115.)

The majority of appellate courts disagree with *Garcia* and have found the substantial evidence test has no import at the prima facie stage. (*People v. Aleo* (2021) 64 Cal.App.5th 865, 872.) Rather, they believe "[i]f a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden. [Citation.] In that circumstance, the trial court should take [the defendant] at his word and not engage in factfinding on the issues 'without first issuing an order to show cause and allowing the parties to present evidence at a hearing.' [Citations.] Implicit in [this] holding is that the third element of section 1170.95, subdivision (a) does not require an absence of sufficient evidence, *on the record of conviction*, to support a hypothetical finding that the defendant is guilty of murder under a currently valid theory." (*Duchine*, *supra*, 60 Cal.App.5th at p. 813.)

We agree with the latter approach. First, we are persuaded by the reasoning of other courts, which have explained "[i]n a section 1170.95 proceeding, the ultimate question is not a backward-looking inquiry into whether a past conviction finds support in substantial evidence. . . . [I]t is instead whether, applying changes brought about by [SB] 1437, there is a prima facie case 'that [the defendant] did not, in fact, act or harbor the mental state required, for a murder conviction under current law.'" (*People v. Secrease* (2021) 63 Cal.App.5th 231, 246, review granted June 30, 2021, S268862.) "The standard adopted by *Garcia*, in which the trial court focuses on the state of the existing record and applies an appellate review substantial evidence standard, makes little

sense in this context. If it had intended the process to be substantial evidence review of the existing record, the Legislature could simply have provided an appellate remedy, such as direct appeal for nonfinal convictions and habeas corpus for final convictions. This is not what it did. Instead, the Legislature imposed the burden of proof on the prosecution, at the resentencing hearing. The interpretation adopted by *Garcia* would mean the prosecution's burden would be to prove 'beyond a reasonable doubt' that 'substantial evidence' exists, which by itself borders on incomprehensible. The court would then employ these two widely divergent standards in a combined (and backwards) fashion to determine . . . whether a jury *hypothetically could have found* a defendant guilty under a permissible theory had it addressed the issue." (*Duchine*, *supra*, 60 Cal.App.5th at pp. 813-814, fn. omitted.)

Second, as our Supreme Court stated after *Garcia* was decided, "the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th, at p. 971.) A court should accept as true the allegations in a section 1170.95 petition unless the record "'contain[s] facts refuting the allegations made in the petition.'" (*Ibid*.) A finding that the record contains substantial evidence to support a conviction under a still-valid murder theory does not refute a petitioner's assertion that he or she could not be convicted under current law.[2] Such a finding only indicates the record contains enough evidence to support a conviction. It does not show as a matter of law that the petitioner's claim is false.

This point is soundly illustrated by examining the deferential nature of substantial evidence review. Under this standard, generally, the appellate court only considers the evidence supporting the conviction. "'[I]t is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have

---

[2] Merriam-Webster Dictionary defines "refute" as "to prove wrong by argument or evidence : show to be false or erroneous." (Merriam-Webster's Dict. Online (2021) <https://perma.cc/3H37-BSW2>.)

9

reached a contrary conclusion.'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143, italics omitted.) Further, the appellate court resolves all evidentiary conflicts in favor of the conviction. (See *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.) It "does not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

Given the amount of deference under this review standard, it cannot be said a section 1170.95 petition is defective as a matter of law simply because there is substantial evidence in the record to uphold a murder conviction under current law. In such a scenario, the record could also contain compelling evidence supporting the petitioner's allegations. Accordingly, even if there is substantial evidence in the record to support a conviction under a still-valid theory, that does not mean the record is free of material factual conflicts. Numerous factual conflicts will likely exist, and they can only be resolved at an evidentiary hearing under section 1170.95, subdivision (d). They cannot be resolved at the prima facie stage. Thus, we disagree with the standard set forth in *Garcia*. To warrant dismissal at the prima facie stage, the prosecution must show the petitioner's allegations are refuted, and, in doing so, that there are no material conflicts of fact. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)

Given this conclusion, the trial court erred by ruling defendant had not made a prima facie showing based on this court's prior opinion affirming defendant's convictions. The previous finding that "substantial evidence show[ed] defendant [directly] aided and abetted the murder," did not sufficiently refute the allegations in his petition. Thus, on remand we direct the trial court to issue an order to show cause under section 1170.95, subdivision (c), and then hold a hearing under subdivision (d) of the statute.

10

*B. Presentence Credits*

After the trial court imposed judgment on August 26, 2011, it awarded defendant 863 days of presentence credit for actual days served. After we modified the judgment on appeal, the trial court resentenced him. The new abstract of judgment, issued on December 6, 2012, again awarded him 863 days of presentence credit. Defendant contends he should have been given additional credit for actual time served between the court's initial sentence and the modification of his sentence. We agree.

"A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.) "[W]hen a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.) "[W]hen a sentence is modified while in progress, . . . [the] defendant's confinement under the original commitment should simply be credited as partial service of the sentence ultimately imposed." (*Id*. at p. 36.) Failing to recalculate this credit on remand constitutes reversible error. (*Id*. a pp. 40-41.)

Relying on *Buckhalter*, the Attorney General argues defendant is not entitled to additional presentence custody credits under section 4019, which provides conduct credits for good behavior. (Citing *People v. Buckhalter*, *supra*, 26 Cal.4th at p. 20.) But defendant is not seeking any conduct credits. He is only seeking credits for actual time served. Though a defendant "is not eligible to earn additional credits for good behavior as a presentence detainee" following modification of a sentence (*id*. at p. 29), the court must "credit the *actual time* [the] defendant had served on his sentence prior to the modification" (*id*. at pp. 23-24).

The record shows the trial court failed to recalculate defendant's credit for *actual* time served after his sentence was modified. Rather, he was credited with only 863 days of actual credit, the same amount he had been credited over a year prior. Defendant maintains he is entitled to 1,322 days of credit for actual time served. We leave it to the trial court to determine on remand whether his calculation is accurate. (See *People v. Montalvo* (1982) 128 Cal.App.3d 57, 62.)

## III

## DISPOSITION

The trial court's orders are reversed, and the matter is remanded for further proceedings as directed in this opinion.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

12