Filed 6/27/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081005 |
| v. | (Super.Ct.No. SWF008183) |
| TARRELL IVORY BOYD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Elaine M. Kiefer, Judge. Vacated; treated as petition for writ of habeas corpus and granted.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazard, and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Nearly 17 years into his 27-year prison sentence, defendant and appellant Tarrell Ivory Boyd moved for a new sentencing hearing on the ground that his custody and conduct credits had been miscalculated at his sentencing. The People agreed, and the

trial court granted the motion, awarding Boyd seven more days of credits. Boyd appeals, contending that the original error warranted a full resentencing to consider the effect of ameliorative sentencing laws passed since his original sentencing hearing.

On our own motion, we invited the parties to address jurisdiction. We hold that the trial court lacked fundamental jurisdiction to consider Boyd's freestanding motion given that his sentence has long been made final. In order to establish jurisdiction for a postjudgment claim that credits were improperly calculated at sentencing, an inmate must file a petition for writ of habeas corpus. We therefore vacate the trial court's order, which was void from the start. However, given the circumstances, we treat Boyd's purported appeal as a petition for writ of habeas corpus, grant the petition, and modify the sentence to reflect the undisputed credits. We reject Boyd's claim that he is entitled to a full resentencing.[1]

## I. BACKGROUND

In 2006, a jury convicted Boyd on four felonies: assault with a semiautomatic firearm (§ 245, subd. (b)), shooting at an inhabited building or vehicle (§ 246), possession of a firearm by a felon (former § 12021, subd. (a)(1)), and dissuading a witness (§ 136.1, subd. (a)). A personal firearm use enhancement (§ 12022.5, subd. (a)), prior serious felony conviction (§ 667, subd. (a)), and prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) were also found true, and the trial court imposed consecutive sentences on all

---

[1] Undesignated statutory references are to the Penal Code.

2

counts. In all, the trial court sentenced Boyd to 27 years in prison with 610 days of custody credits (§ 2900.5) and 91 days of conduct credits (§§ 2933.1, subd. (c), 4019).

In 2023, Boyd moved for a recalculation of his credits and a new sentencing hearing. He contended that his credits should have started accruing from the date of his arrest on a different case, not the date the complaint was filed and he made his first appearance in the current case, which was several days later. At the hearing on the motion, the parties agreed that Boyd should have received 616 days of custody credits and 92 days of conduct credits. The judge ordered a new abstract of judgment to reflect the corrected credits.

## II. ANALYSIS

Boyd's main argument on appeal is that the trial court's imposition of an unauthorized sentence in 2006 entitled him to a full resentencing in 2023. The sentence was allegedly unauthorized because it included 610 rather than 616 days of custody credits and 91 rather than 92 days of conduct credits. Boyd does not contend that the trial court erred in recalculating these credits.

Before addressing the merits of Boyd's argument, however, we must consider whether we have appellate jurisdiction. In *People v. King* (2022) 77 Cal.App.5th 629 (*King*), the Court of Appeal held that, when a case is final, the mere fact that a sentence is unauthorized does not confer jurisdiction on a trial court to vacate that sentence or on a reviewing court to entertain an appeal based on a claim the sentence was unauthorized. (*Id.* at pp. 633, 641; see also *People v. Picklesimer* (2010) 48 Cal.4th 330, 337 ["'In most

3

cases, after the judgment has become final, there is nothing pending to which a motion may attach'"].) On our own motion, we invited the parties to file supplemental letter briefs addressing jurisdiction. Below, we address three grounds for jurisdiction raised by the parties as well as our own research: a trial court's inherent power to correct clerical errors, the unauthorized sentence doctrine, and Code of Civil Procedure section 187. We conclude that none formed a valid basis for the trial court's jurisdiction here.

We thus hold that the trial court lacked jurisdiction to entertain Boyd's motion. The order is therefore void, and we vacate it under our inherent authority to set aside void orders. That done, in the interest of judicial economy, we exercise our discretion to treat Boyd's purported appeal as a petition for writ of habeas corpus, which is the proper method for raising such belated claims of credit miscalculation. We reject Boyd's argument that he is entitled to a full resentencing, but we grant the petition and modify the judgment to reflect the credits both parties agree Boyd is entitled to.[2]

A. *Inherent Power to Correct Clerical Errors*

"It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or

---

[2] We assume without deciding that the trial court in fact erred when it sentenced him in 2006 because both parties agree that it did.

4

upon the application of the parties." (*In re Candelario* (1970) 3 Cal.3d 702, 705 (*Candelario*).)

"Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.'" (*Candelario*, *supra*, 3 Cal.3d at p. 705.) If the error is in rendering judgment, then it is judicial error. (See *People v. Karaman* (1992) 4 Cal.4th 335, 345, fn. 11 (*Karaman*).)

Here, in orally pronouncing its sentence in 2006, the trial court sentenced Boyd to 27 years in prison with 701 days of credits. "In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*Karaman*, *supra*, 4 Cal.4th at p. 344, fn. 9.) What the trial court ordered was properly recorded in judicial records. The trial court's misstatement of the number of days of credits was therefore a judicial error, not a clerical one, as it was one made in rendering the judgment. The "true fact[]" (*Candelario*, *supra*, 3 Cal.3d at p. 705) is that Boyd was sentenced to a term with insufficient credits. That a computational error underlay the judicial error does not make that error a clerical one. (See *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [corrections of clerical errors "'may not make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced'"]; *In re Daoud* (1976) 16 Cal.3d 879, 882 ["Since there is no claim that the . . . order was incorrectly recorded, any error must be judicial"].)

5

Some statements from our Supreme Court could be read to suggest that whether an error is clerical or judicial turns on whether the error itself involved judicial discretion, not whether the error was one in recording a judicial pronouncement (clerical) as opposed to pronouncing it (judicial). *In re Wimbs* (1966) 65 Cal.2d 490 stated that a sentencing court's purported correction of a judgment ordering concurrent sentences rather than consecutive ones "was not of merely clerical error or inadvertence but an attempt, in excess of the court's power, to revise its deliberately exercised judicial discretion." (*Id.* at p. 498.) *Karaman* stated: "It is clear that both the initial judgment rendered by the court and the subsequent modification were the result of the exercise of judicial discretion, and that any error the court sought to remedy thus was judicial rather than clerical in nature." (*Karaman*, *supra*, 4 Cal.4th at p. 345, fn. 11.) And *Candelario* stated that "[a]n amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error . . . unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*Candelario*, *supra*, 3 Cal.3d at p. 705.)

Nevertheless, in *Candelario*, the Court stated clearly that the difference between judicial and clerical error is "'whether the error was made in rendering the judgment, or in recording the judgment rendered.'" (*Candelario*, *supra*, 3 Cal.3d at p. 705.) That persuades us that whether discretion was exercised in pronouncing sentence does not distinguish clerical error from judicial error. Consistent with this, in *In re Wimbs*, *Karaman*, and *Candelario*, each alleged error was in pronouncing the sentence and was

6

held to be judicial, not clerical. (*In re Wimbs*, *supra*, 65 Cal.2d at p. 498; *Karaman*, *supra*, 4 Cal.4th at p. 345, fn. 11; *Candelario*, *supra*, at pp. 705-706.) The references to discretion in those cases are best read to identify the judicial process of determining the sentence, even if governed by mathematical rules (such as for calculating credits) rather than qualitative ones. We therefore decline to follow *People v. Jack* (1989) 213 Cal.App.3d 913, cited by the People in their supplemental letter brief, which held that an error in calculating presentence credits was clerical because a "trial court exercises no discretion when determining the days of presentence custody." (*Id.* at p. 917.)

In contending that the trial court had jurisdiction, both parties cite *People v. Fares* (1993) 16 Cal.App.4th 954 (*Fares*), which stated that "[t]here is no time limitation upon the right to make the motion to correct" credit errors. (*Id.* at p. 958.) *Fares* derives this from *People v. Brite* (1983) 139 Cal.App.3d 950 (*Brite*), which states that a trial court's failure to correctly award credits "'render[s] its initial finding and resulting sentence a nullity.'" (*Fares*, *supra*, at p. 958, citing *Brite*, *supra*, at p. 955.) But *Brite* cites no authority when stating that credit errors render an entire sentence void, and we see no reason why a computational error should have such a drastic effect. An unauthorized sentence, as we explain below, is one that "'could not lawfully be imposed under any circumstance in the particular case'" (*People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*)), but even such legally infirm sentences are only "subject to being set aside judicially," not automatically void. (*People v. Serrato* (1973) 9 Cal.3d 753, 764 (*Serrato*), overruled on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1; see also *Scott*,

7

*supra*, at p. 354, fn. 17 [an unauthorized sentence is an act "in 'excess of [a court's] jurisdiction'"]; *People v. Lara* (2010) 48 Cal.4th 216, 225 ["''"an act in excess of jurisdiction is valid until set aside"'''].)  Thus, rather than characterizing the credit-calculation error here as a clerical one that renders the entire sentence void and subject to correction at any time, we view the error as a judicial one that, as discussed below, is subject to correction whenever brought to the attention of a court that has jurisdiction.

B.  *Unauthorized Sentence*

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*Karaman*, *supra*, 4 Cal.4th at p. 344.)  An exception is an unauthorized sentence, which may be corrected "even after execution of the sentence has begun."  (*Id.* at p. 349, fn. 15.) A sentence is "'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case" (*Scott*, *supra*, 9 Cal.4th at p. 354), and it "is subject to being set aside judicially" (*Serrato*, *supra*, 9 Cal.3d at p. 764).

*King* addressed the scope of the unauthorized sentence doctrine.  The case involved a convicted defendant who in or around 1986 was sentenced to over 100 years in prison.  (*King*, *supra*, 77 Cal.App.5th at p. 633.)  In 2021, the defendant moved to vacate the sentence on the ground that it was unauthorized.  (*Ibid.*)  The defendant contended that the sentence on two of his counts was not for a term that the available sentencing options would have allowed.  (*Id.* at p. 633 & fn. 4.)  The trial court denied the motion on the ground that the original sentence was correct, but the Court of Appeal held

that the trial court lacked jurisdiction to decide the motion and dismissed the appeal, even though it agreed with the defendant that the sentence was unauthorized on one of the counts. (*Id.* at pp. 633 & fn. 4, 642.)

Citing our Supreme Court's decision in *In re G.C.* (2020) 8 Cal.5th 1119, *King* held that "the 'unauthorized sentence' rule is an exception to the waiver doctrine, not to the requirement that a court must have jurisdiction before it may act." (*King*, *supra*, 77 Cal.App.5th at p. 635, citing *In re G.C.*, *supra*, at p. 1129.) Thus, although "[s]uch a sentence may be challenged at any time, even after a judgment of conviction has become final, and even if the judgment has already been affirmed on appeal," "'to invoke this rule the court must have jurisdiction over the judgment.'" (*Id.* at p. 635, citing *In re G.C.*, *supra*, 8 Cal.5th at p. 1130.) Because the defendant's "freestanding motion" was "not a proper procedural mechanism to seek relief," the Court dismissed the appeal while also noting that a "defendant who is serving a longer sentence than the law allows may challenge the sentence in a petition for a writ of habeas corpus." (*King*, *supra*, at p. 640.) At bottom, *King* held that "the unauthorized sentence doctrine does not itself create jurisdiction for a trial court to rule on an incarcerated defendant's motion to correct an alleged illegal sentence after the conviction is final and after the execution of the sentence has begun." (*Id.* at pp. 641-642.)

The rationale of *King* applies here. Under *King*, the trial court had no jurisdiction to decide Boyd's motion simply because Boyd contends his sentence is unauthorized. Rather, such a claim must be made by a petition for writ of habeas corpus. When a

9

habeas petitioner raises an unauthorized-sentence claim, our Supreme Court has indicated it should more readily be addressed on the merits than other claims that might have been raised on direct appeal. (See *In re Seeley* (1946) 29 Cal.2d 294, 298 ["Courts have inquired into the merits of [excessive sentence claims] in habeas corpus even where the question might have been determined on an appeal from the judgment of conviction"]; *In re Ward* (1966) 64 Cal.2d 672, 675 ["Petitioner has waited 20 years to bring this contention before this court; but since the question is one of excessive punishment, it is a proper matter for us to consider on a writ of habeas corpus, despite his delay"].)

In *People v. Codinha* (2023) 92 Cal.App.5th 976 (*Codinha*), the Court of Appeal disagreed with *King* and held that an unauthorized sentence may be corrected "at any time the error comes to its attention, even if execution of the sentence has commenced or the judgment imposing the sentence has become final and correction requires imposition of a more severe sentence, provided the error is apparent from the face of the record." (*Codinha*, *supra*, at p. 990; see *id.* at p. 993.) *Codinha* viewed *King* as overreading *In re G.C.*, which, in *Codinha*'s words, "did not consider whether a trial court in an adult criminal proceeding has jurisdiction to correct its own unauthorized sentence whenever the error comes to its attention." (*Codinha*, *supra*, at p. 993.) *Codinha* also cited a line of Supreme Court cases purportedly recognizing that unauthorized sentences may be corrected even after the judgment has become final. (*Id.* at p. 993.)

Boyd asks us to follow *Codinha* instead of *King*. For two reasons, we decline. The first is that although *In re G.C.* may not have expressly considered whether a trial

10

court always has jurisdiction to correct unauthorized sentences, it explained the unauthorized sentence doctrine as "'an exception to the *waiver doctrine*.'" (*In re G.C.*, *supra*, 8 Cal.5th at p. 1129.) The Court has stated the same in other cases, thus suggesting its limited nature. (See *Scott*, *supra*, 9 Cal.4th at p. 354 ["the 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal"]; *People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Hester* (2000) 22 Cal.4th 290, 295.) That means the doctrine provides a reason for a court to reach the merits of a claim where it might not otherwise.[3]

The second reason we decline to follow *Codinha* is that the line of Supreme Court cases it cites do not actually hold anything contrary to *King*. *King* held that "the unauthorized sentence doctrine does not itself create jurisdiction for a trial court to rule on an incarcerated defendant's motion to correct an alleged illegal sentence after the conviction is final and after the execution of the sentence has begun." (*King*, *supra*, 77 Cal.App.5th at pp. 641-642.) But in none of the cases that *Codinha* cites was jurisdiction based on the unauthorized sentence doctrine. *In re G.C.* was an appeal from a dispositional order in a juvenile delinquency proceeding. (*In re G.C.*, *supra*, 8 Cal.5th at p. 1122.) *Karaman* presented the question of whether a trial court still maintains

---

[3] Instead of articulated as a waiver exception, the unauthorized sentence rule could be couched as an exception to the procedural bars placed on review of claims in habeas petitions. (*Scott*, *supra*, 9 Cal.4th at p. 354 ["The 'unauthorized sentence' principle also has been invoked to determine whether claims previously rejected or never raised are procedurally barred on habeas corpus"].)

"jurisdiction over a defendant, and the power to modify the defendant's sentence in a manner more favorable to the defendant, where the court has imposed a state prison sentence, has ordered a brief stay of execution of judgment in order to permit the defendant to put his or her personal affairs in order prior to commencement of execution of the sentence, and the clerk of the court has entered that sentence in the minutes of the court." (*Karaman*, *supra*, 4 Cal.4th at pp. 338-339.) In *Serrato*, the appeal was from an "order granting probation, such an order being a judgment for the purpose of appeal." (*Serrato*, *supra*, 9 Cal.3d at p. 756.) And *In re Sandel* (1966) 64 Cal.2d 412 (*Sandel*) involved a petition for a writ of habeas corpus. (*Id.* at p. 413.)

None of those cases hold that trial courts can act to correct unauthorized (or unlawful or invalid) sentences outside of a habeas petition or some other posture where they independently have jurisdiction to do so. (*In re G.C.*, *supra*, 8 Cal.5th at p. 1130; *Karaman*, *supra*, 4 Cal.4th at p. 349, fn. 15; *Serrato*, *supra*, 9 Cal.3d at p. 763; *Sandel*, *supra*, 64 Cal.2d at p. 418.) We are unaware of any controlling authority holding that trial courts possess inherent jurisdiction to correct unauthorized sentences where cases are final. To the contrary, the availability of habeas relief to correct unauthorized sentences suggests that trial courts do *not* have inherent jurisdiction to correct such sentences, as habeas relief would be superfluous if a freestanding trial court motion could at any time achieve the same result without the procedural limitations that habeas law imposes. (See *In re Harris* (1993) 5 Cal.4th 813, 838-839 ["'Habeas corpus is available in cases where the court has acted in excess of its jurisdiction,'" and "[t]his aspect of

12

habeas corpus jurisprudence has been invoked in the past by this court to review claims that a criminal defendant was sentenced to serve an illegal sentence"], disapproved on another ground as stated in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 854-855 & fn. 5.)

Additionally, even if we were to follow *Codinha*, Boyd would not show that the trial court had jurisdiction here. *Codinha* held that a trial court can correct an unauthorized sentence at any time "provided the error is apparent from the face of the record." (*Codinha*, *supra*, 92 Cal.App.5th at p. 990.) That proviso came from the court's reading of Supreme Court cases noting that a judgment "'void on the face of the record'" can be corrected "'once jurisdiction has expired'" and that a judgment is "'void on its face when the invalidity is apparent upon an inspection of the judgment-roll.'" (*Id.* at p. 989, italics removed, citing *Karaman*, *supra*, 4 Cal.4th at p. 345, fn. 11; see also *Johnson v. Hayes Cal Builders, Inc.* (1963) 60 Cal.2d 572, 576 ["The validity of the judgment on its face may be determined only by a consideration of the matters constituting part of the judgment roll"].) It is unclear what documents now comprise the judgment roll in a criminal case. (See *People v. January* (1888) 77 Cal. 179, 180 [citing since-rewritten statute in describing contents of judgment roll in criminal case]; Code Civ. Proc., § 670 [describing judgment roll contents in civil cases].) However, by its nature, a judgment roll can include only public documents, as a court can correct a judgment void on the face of the record "solely from the fact that the judgment . . . upon the face of the judgment-roll *demonstrates to the world its own invalidity*." (*People v. Davis* (1904) 143 Cal. 673,

13

676, italics added.)  Here, the only evidence for the trial court's sentencing error comes from Boyd's probation report, and such reports are generally not public documents.  (See § 1203.05, subds. (a)-(b) [probation report may be viewed by "any person" within "60 days from the date judgment is pronounced or probation is granted" or upon court order].)  Because no judgment roll here could have made the invalidity of Boyd's sentence self-evident to the public decades after the fact, his error was not apparent from the face of the record, and thus *Codinha* would not help him even if its rule applied.

The People contend in their supplemental letter brief that Boyd's sentence was *not* unauthorized.  Citing *King*, which stated that an unauthorized sentence is one that could not lawfully be imposed "regardless of the facts" (*King*, *supra*, 77 Cal.App.5th at p. 641, fn. 8), the People state that Boyd's credits "could have been proper under certain circumstances depending on the underlying facts of the length of his custody."  This, however, misreads *King*.  The test for an unauthorized sentence has never depended on whether it could have been imposed under hypothetical facts.  That Boyd "could have" been arrested on some different day, or for some different case, does not determine whether his sentence was unauthorized.  Under the People's logic, seemingly no sentences could be unauthorized, as any length of sentence could be achieved depending on the facts of the crimes and the length of pretrial custody.  Rather, an unauthorized sentence is one that "could not lawfully be imposed under any circumstance *in the particular case*," meaning that we do not ask what could have been possible if the facts were different.  (*Scott*, *supra*, 9 Cal.4th at p. 354, italics added.)

14

Accordingly, the fact that Boyd's sentence was unauthorized did not itself allow the trial court to correct it.

C. *Code of Civil Procedure Section 187*

Code of Civil Procedure section 187 has been cited as a source of a trial court's inherent jurisdiction in certain postconviction matters.  (See *People v. Hyde* (1975) 49 Cal.App.3d 97, 102-103 (*Hyde*).)  The statute states that "[w]hen jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."  (Code Civ. Proc., § 187.)

Our Supreme Court has described the inherent authority granted by Code of Civil Procedure section 187 to apply in "'situations in which the rights and powers of the parties have been established by substantive law or court order but workable means by which those rights may be enforced or powers implemented have not been granted by statute.'"  (*People v. Superior Court (Morales)* (2017) 2 Cal.5th 523, 532; see also *id.* at p. 534 [holding that "because the superior court has jurisdiction under Penal Code section 1054.9 to grant postconviction discovery to the extent consistent with the statute, the court has the inherent power under Code of Civil Procedure section 187 to order preservation of evidence that would potentially be subject to such discovery"].)

15

In *Hyde*, the Court of Appeal cited Code of Civil Procedure section 187 in authorizing a motion procedure to challenge presentence credits. (*Hyde*, *supra*, 49 Cal.App.3d at pp. 102-103; see also *In re Cook* (2019) 7 Cal.5th 439, 455 [discussing *Hyde*].) However, under the law in effect at the time *Hyde* was decided, "there was no procedural mechanism for a criminal defendant to seek judicial review of presentence credits by the Adult Authority," the agency responsible for calculating such credits at the time. (*People v. Mendoza* (1986) 187 Cal.App.3d 948, 952.) The Penal Code was amended after *Hyde* "to require trial courts to calculate presentencing credits as part of the sentencing process," and following the amendment, "courts began to limit the broad holding in *Hyde*." (*People v. Mendoza*, *supra*, 187 Cal.App.3d at p. 952.) "Defendants could still seek review of sentencing error by appeal," but "[a]fter the period for appeal had passed, . . . a defendant's only right to review of sentencing miscalculations was by petition for habeas corpus." (*Ibid.*)

Code of Civil Procedure section 187 does not provide a source of trial court jurisdiction here. Unlike at the time of *Hyde*, under current law, there are other available means for a court to hear presentence credit miscalculation claims. Section 2900.5, subdivision (d) states that "[i]t is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section," and miscalculation claims may either be presented to the trial court at sentencing or, during a direct appeal, to the trial court or reviewing court, depending on the circumstances. (§ 1237.1 [no

16

appeal of presentence credit calculation errors allowed unless first brought in trial court]; *People v. Acosta* (1996) 48 Cal.App.4th 411, 427 [trial court motion not required "when other issues are litigated on appeal"].)  Because "workable means" have been put in place to enforce a defendant's right to presentence credits, Code of Civil Procedure section 187 no longer allows trial courts to review such credits as in *Hyde*.

D.  *Lack of Jurisdiction*

Because none of the potential grounds discussed above apply, we conclude that the trial court had no jurisdiction to entertain Boyd's motion.  What this means for our own ability to review the case depends on whether the trial court lacked fundamental jurisdiction or whether it acted in excess of its jurisdiction.  We find that the trial court lacked fundamental jurisdiction here.

"Although the term 'jurisdiction' is sometimes used as if it had a single meaning, we have long recognized two different ways in which a court may lack jurisdiction. [Citation.]  A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case." (*People v. Ford* (2015) 61 Cal.4th 282, 286.)  "Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations. . . . When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted 'in excess of its jurisdiction.'" (*Id.* at pp. 286-287.)

17

The trial court lost fundamental jurisdiction over Boyd long ago, as he has already served nearly two decades of his sentence. In *People v. Banks* (1959) 53 Cal.2d 370, our Supreme Court stated, in terms making clear that it was referring to fundamental jurisdiction, that "[t]he critical requirement for *control over the defendant and the res of the action* is that the court shall not have surrendered its jurisdiction in the premises by committing and delivering the defendant to the prison authority." (*Id.* at p. 384, italics added.) Because Boyd began serving his prison sentence years ago, the trial court's lack of jurisdiction here was not merely another way to say it acted in excess of its jurisdiction. Rather, it lacked fundamental jurisdiction, and its order was therefore void, not simply voidable. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 ["""an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*"""].) Accordingly, we vacate the order. (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 292 [courts have "inherent power to vacate void orders"].)

E. *Discretion to Treat Appeal as Petition for Writ of Habeas Corpus*

The trial court had no authority to act, but we are left with a situation where Boyd must petition for a writ of habeas corpus to obtain a sentencing credit correction the parties agree he is entitled to. (See *King*, *supra*, 77 Cal.App.5th at p. 640 ["A defendant who is serving a longer sentence than the law allows may challenge the sentence in a petition for a writ of habeas corpus. Indeed, the purpose of the writ is to give summary relief against such illegal restraints of personal liberty."].) Furthermore, on the contested

and purely legal issue of whether remedying the 2006 sentencing error must include a full

resentencing, the parties have already submitted appellate briefing.  Under these

circumstances, requiring Boyd to file a petition would merely delay his remedy and

needlessly consume additional public resources.  Thus, we will treat Boyd's appeal as a

petition for writ of habeas corpus in the interest of judicial economy.  (See *People v.

Segura* (2008) 44 Cal.4th 921, 928, fn. 4 [treating purported appeal as habeas petition "in

the interest of judicial economy"].)[4]

F.  *Full Resentencing*

We accept the parties' agreement that the trial court erred in 2006 in calculating

credits, so the sentence pronounced at that time is unauthorized at least to this extent.  We

can therefore impose the agreed relief.  However, Boyd's contention—that he was

entitled to a full resentencing—does not follow.

That some part of a sentence is unauthorized does not necessarily mean that the

entire sentence (or even part of the sentence) must be vacated.  For instance, in *Sandel*, a

habeas case, the petitioner temporarily escaped prison while serving a sentence for

robbery.  (*Sandel*, *supra*, 64 Cal.2d at p. 414.)  After being captured and pleading guilty

to an escape charge, the trial court ordered that the sentence on the escape charge be

served concurrently with the sentence on the robbery charge.  (*Ibid.*)  Because the Penal

Code at that time "expressly declared that the 'term of imprisonment' for escape was 'to

---

**4**  The result is that we are therefore vacating a trial court order and reimposing the
same order.  But that is the result where the trial court lacked fundamental jurisdiction,
but made a ruling that we think proper if issued on a habeas petition.

commence from the time [the petitioner] would otherwise have been discharged' on the prior sentence" (*ibid.*), not concurrently, our Supreme Court held that "the portion of the judgment ordering petitioner's sentence for escape to be served concurrently with his prior sentence for robbery is of no legal effect" (*id.* at p. 418). That did not mean, however, that the sentence had to be vacated and the matter remanded for resentencing: "[a]side from the question of concurrent or consecutive terms, the remainder of the judgment convicting him of escape and sentencing him to state prison 'for the term provided by law' [was] valid." (*Id.* at p. 419.) The Court thus "deemed [the petitioner] to be under the consecutive sentences required by [the Penal Code] at the time of his conviction of escape" and denied the petition. (*Id.*, pp. 418-419.)[5]

Similarly, in *In re Walker* (1974) 10 Cal.3d 764, the Court held that the petitioner, whose sentence had been commuted from death to life imprisonment without the possibility of parole, was entitled to have his sentence modified to life imprisonment *with* the possibility of parole. (*Id.* at pp. 770-771, 789-790.) However, rather than vacate the

---

[5] The *Sandel* trial court's error was in petitioner's favor, as it ordered concurrent sentences when consecutive sentences were required. The basis for the petition stemmed from the fact that the Adult Authority, which was responsible for determining parole eligibility at the time, had sought to correct the error on its own by refusing to consider the petitioner's parole application until the minimum time on the consecutive sentences had passed. (*Sandel*, *supra*, 64 Cal.2d at pp. 414-415.) The question before the Court was "whether the Adult Authority has the power to 'correct' an erroneous sentence of a trial court," and after answering no, the Court made a "*judicial* correction of the sentencing error which the Adult Authority ha[d] purported to deal with by administrative action alone." (*Id.* at pp. 415-416, 418.)

sentence and remand for a full resentencing, the Court overturned a lower court order granting the habeas writ and modified the sentence. (*Id.* at p. 790.)

Thus, although Boyd is entitled to additional presentence credits, he has not shown that this warrants vacating his entire sentence, which a full resentencing anticipates. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 [full resentencing rule "allows a court to revisit all prior sentencing decisions when resentencing a defendant," including, "as appropriate, revisit[ing] sentencing choices such as a decision to stay a sentence [citation], to impose an upper term instead of a middle term [citation], or to impose concurrent instead of consecutive sentences [citation]"].) Boyd points to three ameliorative laws that have been passed since his 2006 sentencing. This includes Senate Bill No. 620 (2017-2018 Reg. Sess.), which allows the trial court to strike firearm enhancements, and Senate Bill No. 1393 (2017-2018 Reg. Sess.), which allows the trial court to strike serious felony enhancements. He also points to Assembly Bill No. 124 (2021-2022 Reg. Sess.), which created a presumption of a low prison term when a defendant is under 26 years of age at the time of the offense, as Boyd states he was. However, Boyd has not shown that any of these laws were intended to apply to cases that are final. Nor has he shown that the error in presentence credits—which is an error measurable in days, not months or years—"infects" his entire sentence just as an error in any discretionary or more substantial sentencing decision by the trial court would. (*People v. Savala* (1983) 147 Cal.App.3d 63, 69.)

Boyd's arguments to the contrary are unpersuasive. Boyd first argues that the full resentencing rule applies whenever "the judgment is changed in any aspect." However, our Supreme Court has held otherwise. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 35 [idea that "a sentencing remand necessarily entails a full resentencing" is "not correct," italics removed]; *In re Walker*, *supra*, 10 Cal.3d at p. 790.)

Boyd next cites four cases where he claims courts have held that the full resentencing rule applies. However, those cases involved unanalogous situations. *People v. Jones* (2022) 79 Cal.App.5th 37 involved new laws (Senate Bill No. 567 and Assembly Bill No. 518 (2021-2022 Reg. Sess.)) that applied only to judgments that had not yet been made final. *People v. Buycks* (2018) 5 Cal.5th 857 and *People v. Ramirez* (2021) 71 Cal.App.5th 970 involved laws (Proposition 47 and section 1172.6, respectively) that allow for recall of a sentence, which in turn required full resentencing. (See *People v. Buycks*, *supra*, at p. 893.) And *People v. Padilla* (2022) 13 Cal.5th 152 did not involve the full resentencing rule at all. It involved a case where, on a habeas petition, there *was* a resentencing for application of new law that warranted reconsideration of the sentence, which our Supreme Court held reopened the sentence for consideration of another new law. Here, our holding does not warrant a resentencing to reconsider the sentence at all, but simply a correction to award seven more days of custody credits. Because Boyd's case has been made final and no law allowing for recall of his sentence applies, his reliance on these cases is misplaced.

We therefore find that Boyd is not entitled to a full resentencing. We in turn also reject his contention that he was provided ineffective assistance of counsel at the 2023 hearing by failing to raise the full resentencing issue. That Boyd is not entitled to a full resentencing means that his trial counsel was not deficient in not raising it. Similarly, we reject his contention that he had a right to be personally present at the 2023 hearing. "[I]t is well established that a represented defendant has no constitutional or statutory right to be present to address purely legal questions or where his or her 'presence would not contribute to the fairness of the proceeding.'" (*People v. Fedalizo* (2016) 246 Cal.App.4th 98, 109.) No facts were disputed, and whether or not he was present would not have contributed to the fairness of the hearing.

## III.  DISPOSITION

The trial court's February 22, 2023 order granting Boyd's motion is vacated.  The appeal is treated as a petition for a writ of habeas corpus.  The petition is granted, and Boyd's sentence is modified to reflect 616 days of custody credits and 92 days of conduct credits.  The matter is remanded and the trial court is directed to amend the abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION

RAPHAEL
                                                                                    J.

We concur:

CODRINGTON
            Acting P. J.

FIELDS
                    J.